IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| TESHIA ANTOINETTE BIRTS, ) | |
| ) | |
| Debtor. ) | |
| _____ ) | |
| ) | |
| THOMAS P. GORMAN, ) | 1:12cv427 (LMB/TCB) |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | |
| ) | |
| TESHIA ANTOINETTE BIRTS, ) | |
| ) | |
| Appellee. ) | |

## MEMORANDUM OPINION

The trustee of the bankruptcy estate of Teshia Birts ("Birts" or "debtor") appeals the decision of the bankruptcy court confirming Birts' proposed Chapter 13 Plan ("the Plan") over the trustee's objection. For the following reasons, the Court will reverse the decision of the bankruptcy court and remand for further proceedings.

### I. BACKGROUND

Birts filed her Chapter 13 petition on August 11, 2011 and the Plan at issue in this appeal on January 10, 2012. The five-year Plan proposes monthly payments of $317.01 to the trustee for the first 29 months to be followed by monthly payments of

$540 for the remaining 31 months.[1] See Appellate Record ("R.") at 59. These payments would satisfy 7% of the allowed non-priority unsecured claims by the conclusion of the Plan period. Id. at 60. In addition, the debtor proposed to continue to pay $271 a month, which is the full amount of the scheduled monthly payments due, on $31,710[2] in outstanding student loans. Id. at 65 (Schedule J). By being paid outside of the Plan, these student loan payments would reduce the principal of the student loans by several thousand dollars at the end of five years.[3] In contrast, if Birts paid down her student loans on a pro rata basis within the Plan along with the other unsecured debts, the principal of her student loan balance would be minimally reduced, at best, by the end of the Plan.[4]

---

[1] Based on the claims register filed in the bankruptcy court, Birts' unsecured debts include a car loan, a collection agency debt arising from an unpaid Verizon account, multiple credit card debts, student loans, and other miscellaneous debts.

[2] Although Birts initially indicated that she owed $39,289.47 in student loans, see R. at 26 (Schedule F), the U.S. Department of Education filed a proof of claim in the amount of $31,710.07.

[3] The record is inconsistent as to exactly how much the student loan debt would be reduced under either version of the Plan. At oral argument before the bankruptcy court, the debtor estimated that the balance would be reduced to $23,406 after five years under her proposed Plan. See Bankr. Tr. at 7:11-20. In her response to the trustee's objection to confirmation, however, Birts indicated that the balance would be reduced to $26,953.02 under her Plan. R. at 74.

[4] The debtor contends that the principal would not be reduced at all under this scenario and that negative amortization might

2

The trustee objected to confirmation of the Plan, arguing that the debtor's proposed treatment of her student loans outside the Plan unfairly preferenced the student loan lender to the detriment of the other unsecured creditors, in violation of 11 U.S.C. § 1322(b)(1). After hearing oral argument, the bankruptcy court took the matter under advisement and subsequently issued a memorandum opinion ("Bankr. Mem. Op.") overruling the trustee's objection and confirming the Plan.

## II. DISCUSSION

A. Standard of Review

On appeal, a district court reverses a bankruptcy court's factual findings only where they are "clearly erroneous." See, e.g., Fed. R. Bankr. P. 8013; In re Tudor Assocs. LTD (II), 20 F.3d 115, 119 (4th Cir. 1994). Questions of law are reviewed de novo. See, e.g., In re Tudor, 20 F.3d at 119.

B. Unfair Discrimination Under 11 U.S.C. § 1322(b)(1)

11 U.S.C. § 1322(b)(1) provides in relevant part:

> [T]he plan may...designate a class or classes of unsecured claims, as provided in section 1122 of this title,[5] but may not discriminate unfairly against any

---

occur. See Bankr. Tr. at 7:7-8:15. At oral argument before this Court, however, the trustee represented that the loans would not negatively amortize. In any event, the parties appear to agree that, under the trustee's proposal, the principal on the student loan debt would at most be only minimally reduced.

[5] Section 1122 provides:

3

class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims.

Section 1322(b)(5) permits a Plan to "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due"; Birts' student loans would qualify as this type of long-term debt.

The parties agree that § 1322(b)(5) is subject to the unfair discrimination limitation described in subsection (b)(1). See In re Thibodeau, 248 B.R. 699 (Bankr. D. Mass. 2000) (explaining alternative approach that exempts long-term debt from unfair discrimination analysis but ultimately finding that § 1322(b)(5) classifications cannot unfairly discriminate). By proposing to pay her student loans outside of the Plan, Birts has designated a separate class of unsecured claims. As a result of this proposal, the student loan lender would be paid

---

(a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

(b) A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

4

more than three times as much in dollar amounts as the other unsecured creditors, even though the student loan debt constitutes only one-third of the total unsecured debt. See Appellant's Br. at 4. Accordingly, the question presented is whether this differential treatment constitutes "unfair" discrimination under § 1322(b)(1).

As the bankruptcy court recognized, courts have not settled on a uniform test to assess whether a classification "unfairly discriminates" within the meaning of the statute. Courts have developed two primary tests to evaluate what constitutes unfair discrimination, neither of which has been adopted by the Fourth Circuit.[6] The Eighth Circuit's test has been widely applied, and includes the following factors:

(1) [W]hether the discrimination has a reasonable basis;
(2) [W]hether the debtor can carry out a plan without the discrimination;
(3) [W]hether the discrimination is proposed in good faith; and
(4) [W]hether the degree of discrimination is directly related to the basis or rationale for the discrimination.

---

[6] In the Chapter 11 context, the Fourth Circuit affirmed by an unpublished per curiam opinion the district court's use of a test analogous to those discussed here. See Ownby v. Jim Beck, Inc. (In re Jim Beck, Inc.), No. 97-2701, 1998 U.S. App. LEXIS 20736 (4th Cir. Aug. 24, 1998). The district court had considered "(1) whether there is a reasonable basis for the discrimination; (2) whether the plan can be confirmed and consummated without the discrimination; (3) whether the discrimination is proposed in good faith; and (4) the treatment of the classes discriminated against." Ownby v. Jim Beck, Inc. (In re Jim Beck, Inc.), 214 B.R. 305, 307 (W.D. Va. 1997).

In re Leser, 939 F.2d 669, 672 (8th Cir. 1991) (citing In re Wolff, 22 Bankr. 510, 512 (Bankr. 9th Cir. 1982)).

The bankruptcy courts in this district have also applied a slightly different test created in the Western District of New York, which considers:

(1) Whether there is a rational basis for the classification;
(2) Whether the classification is necessary to the debtor's rehabilitation under chapter 13;
(3) Whether the discriminatory classification is proposed in good faith;
(4) Whether there is a meaningful payment to the class discriminated against;
(5) The difference between what the creditors discriminated against will receive as the plan is proposed, and the amount they would receive if there was no separate classification.

In re Linton, 2011 Bankr. LEXIS 2939, at *3-4 (Bankr. E.D. Va. July 27, 2011) (citing In re Delauder, 189 B.R. 639 (Bankr. E.D. Va. 1995) and In re Husted, 142 B.R. 72 (Bankr. W.D.N.Y. 1992)).

The bankruptcy court below applied a hybrid version of these two tests and considered the following factors in determining whether the Plan unfairly discriminated against the general unsecured creditors:

(1) Whether the discrimination has a reasonable basis;
(2) Whether the debtor can carry out a plan without the discrimination;
(3) Whether the discrimination is proposed in good faith; and
(4) The difference between what the creditors discriminated against will receive as the plan is

6

>proposed, and the amount they would receive if there were no separate classification.

See Bankr. Mem. Op. at 2-3 (quoting In re Leser, 939 F.2d 669, 672 (8th Cir. 1991) and In re Husted, 142 B.R. 72, 74 (Bankr. Bankr. W.D.N.Y. 1992)). The Court finds that the test as proposed by the bankruptcy court includes all of the factors relevant to a reasonableness determination and was the proper test to apply to this case; however, the bankruptcy court's finding that the Plan does not unfairly discriminate against the non-student loan creditors was clearly erroneous.

**1. Reasonable basis for the discrimination**

The bankruptcy court found that there is a reasonable basis for the discrimination because student loans are non-dischargeable and "a strong public policy exists in favor of the federal student loan program." Bankr. Mem. Op. at 4. It is generally accepted, and the parties agree, that non-dischargeability does not by itself justify discrimination against creditors. See In re Thibodeau, 248 B.R. at 702-03 ("It is well recognized that the nondischargeability of student loan debt is not a sufficient ground to permit separate classification and more favorable treatment of such debt."). It is clear that Congress did not intend to give categorical distributional preference to non-dischargeable student loans, as they are not statutorily granted priority status over other

7

unsecured debts like, for example, domestic support and tax debts. See 11 U.S.C. § 507. Using the non-dischargeable nature of student loans as a basis for discrimination would eviscerate the detailed priority system of § 507 and make preferential treatment of student loans the rule rather than the exception.

The Court agrees with the view that there are strong policy considerations underlying the student loan program which would favor preferential treatment of student loan debt. Even the trustee conceded before the bankruptcy court that, were he a member of Congress, he would give priority status to student loans; however, that is not the law. See Bankr. Tr. at 10:1-6. In relying on the strong public policy in favor of repayment of student loans, the bankruptcy court relied on Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour), 433 F.3d 393 (4th Cir. 2005), in which the Fourth Circuit's analysis underscored the careful consideration courts should give to the distributional scheme established by the bankruptcy code. The Fourth Circuit was faced with the "undue hardship" exception to non-dischargeability of student loans. The court observed that, in adopting the onerous "undue hardship" standard, Congress was concerned with the viability of the student loan program; according to the court, the "heightened standard protects the integrity of the student-loan program and saves it 'from fiscal doom.'" Id. at 399-400. As with the undue hardship standard,

8

it is the domain of Congress to weigh the relevant public policy considerations and accordingly specify the treatment of student loans in bankruptcy. By not designating student loans as priority claims under § 507, Congress has chosen not to categorically treat them differently.

Aside from student loans not being dischargeable and these policy considerations, the bankruptcy court relied only on the debtor's status as a single mother with three children in concluding that the discrimination was reasonable. The debtor has not pointed to any case law supporting her view that student loans are properly favored under these circumstances. To the contrary, the trustee has cited numerous cases highlighting the limited situations in which differential treatment of creditors is justified. For example, in In re Crawford, 324 F.3d 539, 543 (7th Cir. 2003), the Seventh Circuit explained that classification may be appropriate "if without classification the debtor is unlikely to be able to fulfill a Chapter 13 plan and the result will be to make his creditors as a whole worse off than they would be with classification." The court offered as an example a situation in which "the debtor is a truck driver and one of his creditors is the state driver's license bureau which unless paid in full will yank his license, with the consequence that he won't have earnings out of which to make the payments called for in his plan." Id. Similarly, in In re

9

Pracht, 464 B.R. 486, 489 (Bankr. M.D. Ga. 2012), the court permitted discrimination in favor of a student loan lender when the debtor was eligible for the Public Service Loan Forgiveness Program, under which all of the debtor's remaining student loan debt would be forgiven by the federal government after 120 timely payments. The court found that the opportunity for the debtor to be released from this debt outweighed the detriment to the other unsecured creditors caused by the differential treatment in bankruptcy. See also In re Kalfayan, 415 B.R. 907, 910 (Bankr. S.D. Fla. 2009) (permitting preferential treatment of an optometrist debtor's student loans because, if the debtor defaulted on these loans, the state department of health could suspend or revoke her professional license "and therefore jeopardize her ability to earn income sufficient to support a dividend to other unsecured creditors").

Birts has identified no analogous extenuating circumstances, but has instead relied on the nature of student loan debt and her generic interest in a "fresh start." These are insufficient bases to justify discrimination in favor of non-dischargeable debts, because these concerns would exist in any bankruptcy case involving student loans and would essentially create a categorical preference for such loans not authorized by Congress. Cf. In re Groves, 39 F.3d 212, 216 (8th Cir. 1994) (rejecting "the proposition that a Chapter 13

debtor's interest in a 'fresh start' justifies separately classifying student loans for the sole purpose of preferentially repaying those accelerated debts to the prejudice of other unsecured claims"). For these reasons, this Court finds that the bankruptcy court erred in finding a reasonable basis for the discrimination.

### 2. Debtor's ability to fulfill a plan absent discrimination

The bankruptcy court found that the debtor would likely be able to fulfill a plan that required payment of her student loans on a pro rata basis along with other unsecured creditors, but did not find this factor dispositive. The bankruptcy court also hypothesized that facing accumulated student loan debt after bankruptcy could give the debtor "an incentive not to complete her Plan payments and to convert her case to Chapter 7." Bankr. Mem. Op. at 4. The bankruptcy court has provided no explanation for this hypothesis. To the contrary, the trustee has forcefully argued that the debtor would have no incentive to convert her case to Chapter 7 because the Chapter 13 plan is far more favorable to her. For example, she will be able to retain her real and personal property rather than face liquidation of her assets and will cure her federal tax obligations and extinguish the second deed of trust on her home.

### 3. Debtor's good faith

The bankruptcy court found that the debtor had proposed the Plan in good faith, observing that there had been no suggestion to the contrary. Although the trustee has not made a formal disposable income-based objection to the Plan, he has challenged this good faith finding by arguing that the debtor has acted in bad faith by failing to pledge her entire disposable income to the Plan. The trustee points out that Birts' monthly disposable income is $476.08 but she has only proposed initial monthly payments of $317.01, leaving her with $159.07 a month not pledged to the Plan. See R. at 65 (Schedule J).

The Court agrees with the trustee, as it is inherently unfair to discriminate against a class of unsecured creditors, satisfying only a small portion of their claims, when the debtor still retains a significant portion of her disposable income. The unfairness is especially apparent in this case, where the amount of disposable income retained by the debtor represents half of the amount she has dedicated to the Plan for these creditors.

The bankruptcy court declined to consider the disposable income issue because no formal disposable income-based objection had been made, see Bankr. Mem. Op. at 5 n.4; however, the bankruptcy judge has "an independent duty to verify that [the] Chapter 13 plan does in fact comply with the law irrespective of lack of objection by creditors or the Chapter 13 trustee," and a

discriminatory plan devoting less than 100% of the debtor's disposable income strongly suggests bad faith. See In re Thibodeau, 248 B.R. 699 (Bankr. D. Mass. 2000) (citing In re Bowles, 48 B.R. 502, 505 (Bankr. E.D. Va. 1985)). Accordingly, the bankruptcy court abused its discretion in failing to consider the effect of the disposable income issue on its finding of good faith.

### 4. Difference in creditors' recovery with and without discrimination

The final factor in the unfair discrimination inquiry involves an evaluation of the effect of the differential treatment on disfavored creditors compared to what they would recover in the absence of discrimination. Under the Plan, the non-student loan unsecured creditors would receive approximately 7% of their claims, whereas that percentage would more than double to 16% if the student loans were included under the Plan and increase to 19% if student loans were included and all of the debtor's disposable income were devoted to the Plan. See Appellant's Ex. 1. The trustee strenuously argues that, because the creditors' entitlement would more than double under a non-discriminatory plan, this factor weighs heavily against differential treatment. The bankruptcy court found, however, that although the percentage difference in the creditors' recovery may appear significant, the difference in actual

dollars is minimal. Specifically, because the student loan debt comprises approximately one-third of the total unsecured debt, all of the other unsecured creditors together would receive an additional $92.11[7] per month, for a total of $5,527 over the life of the Plan, if the student loans were paid within the Plan. As the trustee correctly explained during oral argument, however, these small dollar amounts are not uncommon in Chapter 13 plans, and certainly the unsecured creditors would receive a substantially higher payout in relative terms under a non-discriminatory plan. For these reasons, the Court finds that this factor supports a finding that the discrimination is unfair.

### III. CONCLUSION

For the above-stated reasons, the decision of the bankruptcy court will be reversed and this case will be remanded by an order to accompany this Memorandum Opinion.

Entered this \_\_1\_\_ day of August, 2012.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge

---

[7] The bankruptcy court's memorandum opinion reflects this figure as $92.17.